# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS F. BROWN, | 1:09-cv-01989 AWI GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. HARTLEY, | |
| Respondent. / | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in 1983 of second degree murder. Petitioner is serving a sentence of seventeen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the Board of Parole Hearings (Board) violated his due process rights in its 2008 decision finding him unsuitable for parole, because there was no evidence to support the finding that he currently posed an unreasonable risk of danger to the public if released.

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

Petitioner filed a state habeas court petition challenging the Board's 2008 decision in the Los Angeles County Superior Court on September 25, 2008.  The petition was denied in a reasoned decision on February 25, 2009. Petitioner then filed a state habeas petition in the California Court of Appeal, Second Appellate District.  The court denied the petition in a reasoned decision on April 30, 2009, with citation to In re Shaputis, 44 Cal.4th 1241 (2008) and In re Lawrence, 44 Cal.1181 (2008).  Petitioner then filed a petition in the California Supreme Court. The petition was summarily denied on October 28, 2009.

Petitioner filed the instant federal petition for writ of habeas corpus on November 13, 2009.  Respondent filed an answer to the petition on January 29, 2010.  Petitioner filed a traverse on March 2, 2010.

## STATEMENT OF FACTS[2]

The commitment offense occurred in January of 1982 in Los Angeles. Petitioner and two or three of his crime partners, all of whom were members of the Grape Street Crips gang, approached the victims' vehicle.  Believing the victims were members of a rival gang, they ordered the victims to get out of the car at gunpoint. Petitioner demanded money. One of the victims surrendered his money, but Petitioner shot him anyway. The victim died as a result of a gunshot wound to the head. Petitioner then fired two more shots at the second victim as he ran from the scene. The second victim survived. The Grape Street gang was responsible for several other crimes, including two homicides and a rape in the same area during the same time this murder occurred. Petitioner admitted he was involved in two robberies as part of his gang activities.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

---

[2] This information is taken from the opinion of the superior court.

v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

3

Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

4

        (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
        (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
        (C) The victim was abused, defiled or mutilated during or after the offense.
        (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
        (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

  (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

  The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

  Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

  The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

1  Id. at 1214.

2  In addition, "the circumstances of the commitment offense (or any of the other factors
3  related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to
4  the determination that a prison remains a danger to the public.  It is not the existence or
5  nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the
6  significant circumstance is how those factors interrelate to support a conclusion of current
7  dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

8  "In sum, a reviewing court must consider 'whether the identified facts are *probative* to the
9  central issue of *current* dangerousness when considered in light of the full record before the
10  Board or the Governor.'"  Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in
11  original) (citing Hayward v. Marshall, 603 F.3d at 560).

12  A.  Last Reasoned State Court Decision

13  In the last reasoned decision, the Los Angeles County Superior Court rejected Petitioner's
14  claims as follows:

> Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg., tit. 15, § 2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667).
>
> Petitioner was received in the Department of Corrections on March 22, 1983 after a conviction for second-degree murder with use of a firearm. He was sentenced to seventeen years to life in prison. His minimum parole eligibility date was May 22, 1994. The record reflects that petitioner and two or three crime partners, all of who were members of the Grape Street Crips gang, approached the victims' vehicle. Believing that the victims were members of a rival gang, they ordered the victims to get out of the car at gunpoint. Petitioner demanded money. The victim surrendered the money, but petitioner shot him anyway. He died as a result of a gunshot wound to the head. Petitioner then fired two more shots at the second victim as he ran from the scene. The second victim survived. The Grape Street gang was responsible for several other crimes, including two homicides and a rape in the same area during January, 1982, when this murder occurred. Petitioner admitted that he was involved in two robberies as part of his gang activities.
>
> The Board found petitioner unsuitable for parole after a parole consideration hearing held on June 11, 2008. The decision was based on several factors, including the commitment offense.
>
> The nature of the commitment offense may indicate that a prisoner poses an unreasonable risk of danger to society when the offense is especially heinous, atrocious or cruel. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1); *Rosenkrantz* at 682-683.) In some cases, "the nature of the prisoner's offense, alone, can constitute a sufficient basis for

denying parole." (*Id at* 682; *In re Lawrence* (2008) 44 Cal.4th 1181, 1207.) In this case, the commitment offense was especially heinous because multiple victims were killed or attacked in the same incident. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A).) There is also some evidence that the commitment offense is especially heinous because "the motive for the crime is inexplicable or very trivial in relation to the offense" (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E).) "To fit the regulatory description, the motive must be materially less significant (or more "trivial") than those which conventionally drive people to commit the offense in question, and therefore more indicative of a risk of danger to society if the prisoner is released than is ordinarily present." (*In re Scott* (2008) 119 Cal.App.4th 871, 893.) The victim was killed during the course of a robbery. While the motivation to obtain money is in itself a trivial motive for murder (*In re Honesto* (2005) 130 Cal.App.4th 81, 95), in this case the murder was even more senseless because the victim had already complied with petitioner's demands before the shooting. Petitioner acknowledged that he did not know the victims personally, but he attacked them because they were believed to be members of a rival gang. Gang rivalry is materially less significant than those motives which conventionally drive people to commit murder, and therefore more indicative of a risk of danger to society if petitioner is released than is ordinarily present.

The heinousness of the crime is relevant to petitioner's unsuitability for parole only if it is indicative of the "ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety." (*In re Shaputis* (2008) 44 Cal.4th 1241, 1255.) There must be a "rational nexus" between the gravity of the commitment offense and petitioner's current dangerousness. (*In re Lawrence* (2008) 44 Cal.4th 1181, 1213.) "The aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-conviction history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." (Id at 1214.)

In this case, petitioner's pre- and post-conviction history establishes a rational nexus between the commitment offense and the implication that petitioner poses an unreasonable risk of danger to society. Petitioner has previous history of violence (Cal. Code Regs., tit. 15, § 2402, subd. (c)(2).) Petitioner was involved in criminal conduct since he was a juvenile. He was a member of an extremely violent and destructive gang. As a member of the Grape Street Crips, he was involved in at least two robberies prior to the commitment offense, which also began as a gang-related robbery. Additionally, there is some evidence that petitioner remains an unreasonable risk of danger to society based on his serious misconduct in prison. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(6).) Petitioner has only received four CDC 115s; however, three of these were for possession of weapons, the last of which was received on April 24, 1998. Petitioner was still an active Crips member while incarcerated at San Quentin. It appears that he would hold weapons for other gang members as well as himself. The Board was concerned that this last CDC 115, which is indicative of continued gang activity, occurred only ten years before the parole suitability hearing. The Board noted that he was listed in associating with others who have the ability to create mayhem. (*Reporter's Transcript*, June 11, 2008, p. 49.) Furthermore, petitioner's most recent psychological evaluation was not supportive of release. Petitioner scored in the moderate range of psychopathology and was considered a low to moderate risk of future violence. (*Id* at 52.) All of this is some evidence that petitioner continues to be an unreasonable risk of danger to society.

(See Attachments to Petition.)

B.   2008 Board Hearing

As discussed by the superior court, *supra*, the Board found Petitioner unsuitable for parole at his June 11, 2008, parole consideration hearing based on the circumstances of the commitment offense, prior criminal history, institutional misconduct, and unsupportive psychological evaluation.

The commitment offense involved Petitioner intentionally killing a victim during a robbery. Petitioner, along with two or three of his gang members, approached a vehicle believing the occupants were members of another gang. Petitioner ordered the victims out and demanded money. When one victim complied, Petitioner shot and killed him. He then fired shots at the fleeing second victim.  The Board determined the motive, gang rivalry, was trivial on its face, but made even more so since the victim had already complied with Petitioner's demands. Cal. Code Regs. tit. 15, § 2402(c)(1). In addition, multiple victims were attacked within the meaning of Cal. Code Regs. tit. 15, § 2402(c)(1)(A).

The Board further noted Petitioner had been an active member of an extremely violent and destructive gang that was responsible for several murders and rapes. Cal. Code Regs. tit. 15, § 2402(c)(2). Petitioner's criminal history began as a juvenile, and he was involved in two robberies in addition to the commitment offense. Moreover, Petitioner continued his violent criminal behavior in prison. Cal. Code Regs. tit. 15, § 2402(c)(6).  He committed four serious rules violations, three of them being for possession of a weapon.  He also maintained his ties to his criminal gang during incarceration. His most recent CDC-115 was in 1998 for possession of a weapon and the Board found this constituted evidence of continued active participation in his criminal gang.

The most recent psychological report was not supportive of release. Petitioner scored in the moderate range of psychopathology and was considered a low to moderate risk of future violence.  Cal. Code Regs. tit. 15, § 2402(b).

After the considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  In light of the circumstances of Petitioner's commitment offense, his prior violent and serious criminal history, his institutional misconduct, his continued active participation in his criminal gang, and

the unfavorable psychological report, the state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record. Accordingly, federal habeas corpus relief is unavailable.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 21, 2010**                    /s/ **Gary S. Austin**
                                              UNITED STATES MAGISTRATE JUDGE